FRANK B. CHAPMAN, Appellant, *v.* GEORGE F. COMSTOCK, Respondent.

An order of General Term granting a new trial in an action tried by a jury, where there is a conflict of evidence and the order may have been made upon the facts, is not reviewable in this court unless it appears from the record that the order was affirmed as to the facts, or the appeal therefrom dismissed.

Reported below, 58 Hun, 325.

(Argued June 14, 1892; decided October 1, 1892.)

APPEAL from an order of the General Term of the Supreme Court in the fourth judicial department, made December 6, 1890, which reversed a judgment in favor of plaintiff, entered upon a verdict and reversed an order denying a motion for a new trial, and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin Nottingham* for appellant.

*Andrew H. Green* for respondent.

HAIGHT, J. This action was brought to recover the sum of. $8,973.37, being the amount due and owing the plaintiff by the American Dairy Salt Company (Limited), a business corporation organized under chapter 611, of the Laws of 1875. It was sought to maintain the action against the defendant upon the ground that he was the president and director of the corporation, and that the corporation had failed to file the annual report required by the statute during the years 1881 to 1888, inclusive.

On and prior to February 11, 1882, the plaintiff held a promissory note for $10,880.90 of the Onondaga Coarse Salt Association, of which Thomas Molloy was treasurer. That company was winding up its business and desired to pay the note. The plaintiff asked Molloy if he had any place he could use it for him, saying that he had no place for it and did not want to use it at that time. Molloy said he could take it for the American Dairy Salt Company (Limited), of which he was also treasurer. Further conversation took place in reference to the responsibility of the company and its directors, resulting in the plaintiff's leaving the money with that company, and it issued to him a pass-book in which was entered " Frank B. Chapman, in special account with the American Dairy Salt Company (Limited)." Under the credit column was entered February 11, 1882, cash $10,880.90, and semi-annually thereafter interest was credited upon that amount at the rate of six per cent. The plaintiff was subsequently paid $4,300 April 30, 1885 ; $1,000 June 1, 1888 ; $1,000 July 11, 1888, for which receipts were given. Shortly after the last payment the company failed, refused to pay the balance, and in October following a receiver was appointed. The complaint alleges that the money was deposited with the company by the plaintiff. This was controverted by the answer, which alleged that it was loaned, that the corporation was

not organized or authorized to do a banking business or to receive deposits of money, but on the contrary was forbidden by law from so doing, and that more than three years had elapsed after the cause of action accrued before the commencement of this action. The trial court submitted to the jury the question as to whether the leaving of the money with the company was a loan or a deposit, instructing them that if it was a loan, it was not necessary for the plaintiff to make a demand and that his right of action accrued *eo instanti*, and that, consequently, the Statute of Limitations had run as to his claim against the defendant; but if they found that the money was left with the company as a deposit, no right of action would accrue until there was a demand for the payment of the money and the same was refused. That such demand was not made until the summer of 1888, and, consequently, the Statute of Limitations would not interfere with the plaintiff's right to recover. The verdict was for the plaintiff. A motion for a new trial was then made upon the minutes upon various grounds, among which was that the verdict was contrary to the evidence. The motion was denied and an appeal was taken to the General Term from the judgment and from the order denying a new trial. The General Term reversed the judgment and order, and granted a new trial with costs to abide the event. In the order of reversal the General Term certified that it was held and decided by that court: "1. That the verdict ought to have been directed in favor of the defendant, or a nonsuit granted. 2. That the verdict is against the evidence. 3. That the several exceptions taken to the refusal to charge present error."

The appellant gave the usual stipulation for judgment absolute and appealed. Is the order appealable to this court? The appellant insists that it is. The respondent does not dispute this but claims that the new trial is to be regarded as granted on questions of fact. If so, we are unable to understand how it is appealable. As we have seen, one of the grounds upon which the court certifies that the reversal was based is "That the verdict is against the evidence." If from

this we are to understand that the new trial was granted for the reason that the verdict was against the weight of evidence, then we cannot review the order. (Code of Civil Procedure, § 1338; *In the Matter of Ross*, 87 N. Y. 514–516.)

But if as is claimed, it was held by the General Term that there was no evidence to sustain the verdict, and if we should reach the conclusion that the court erred in this regard then the question as to whether the verdict was against the weight of evidence is left open undetermined. That question was distinctly raised by the motion for a new trial, and the order entered thereon was brought up for review in the General Term, and if we should now reverse the General Term and affirm the judgment of the trial court, the defendant would have a judgment against him, entered upon a verdict and affirmed in the court of last resort, without having his question considered as to whether the verdict was against the weight of evidence. The rule is now well settled that an order of the General Term granting a new trial, in an action tried before a jury, when there was a conflict of evidence, and the order may have been made upon the facts, is not reviewable in this court unless it appears from the record that the order was affirmed as to the facts, or the appeal therefrom dismissed. (*Wright* v. *Hunter*, 46 N. Y. 409; *Harris* v. *Burdett*, 73 id. 336; *Snebley* v. *Conner*, 78 id. 218; *Kennicutt* v. *Parmalee*, 109 id. 650; *Voisin* v. *Commercial Mutual Ins. Co.*, 123 id. 120–131; *Peil* v. *Reinhart*, 127 id. 381–385; *Williams* v. *D., L. & W. R. R. Co.*, Id. 643.)

It may be claimed that there was no substantial conflict in the evidence. It is true that there is no material conflict in the statement of the witnesses, but the parties widely differ as to the inferences that should be drawn from their statements. It was necessary to determine what the intention and understanding of the parties were as to whether the money was left on loan or deposit. In determining this question it became necessary for the jury to take into consideration all of the circumstances surrounding the parties at the time, and under

our view, presented such a conflict as would bring it within the rule referred to.

Upon the trial the defendant asked for the direction of a verdict in his favor which was refused. By so doing and remaining silent, he waived the right to have any particular question of fact submitted to the jury. He, however, did not waive the right to ask for a new trial in case the verdict was against the weight of evidence.

We have not omitted a careful examination of the evidence and the conclusion we have reached therefrom gives additional force to the position taken.

The evidence shows that the plaintiff left his money with the company and took a pass-book upon which the amount was credited. Semi-annual interest was subsequently credited in the same form and manner as in the banks. From these facts standing alone the inference might properly be drawn that it was intended that the money should be left on deposit. This was some evidence to sustain the verdict. But the other facts and the inferences permissible therefrom tend to show that a loan was intended. The plaintiff had the money to loan. He had it with the Onondaga Coarse Salt Association on loan; that company wanted to pay it. He applied to Molloy to find a place for it. Molloy agreed to take it for the American Dairy Salt Company, and issued the pass-book therefor. The pass-book does not necessarily conflict with the theory of a loan. Molloy testified that the indebtedness to the plaintiff was in the form of an account, that the word "special" in the pass-book was used to designate it from the merchandise account or that which related to the ordinary business of the company, that there were accounts so marked the consideration of which was for money loaned to the company, that in all cases of special accounts the money was used by the company in the making and selling of salt, etc. Molloy called it a loan but did not know the distinction between a loan and a deposit so as to define one as distinguished from the other. The company had the power to borrow money for the legitimate purposes of the corporation (Laws of 1875,

chap. 611, § 13), but was prohibited from being in any way interested in any fund that shall be employed for the purpose of receiving deposits, making discount, or issuing notes or other evidences of debt, to be loaned or put into circulation as money. (3 R. S. [7th ed.] 2124, § 3.)

The question before the General Term was, therefore, as to the weight of evidence and its determination thereon is not reviewable here.

The appeal should be dismissed with costs.

All concur, except VANN, J., not voting.

Appeal dismissed.